\*CINCINNATI INTERURBAN CO. v. SAMUEL E. HAINES, ADMR.

1. INSTRUCTION NOT DEFINING NEGLIGENCE CHARGED AND ASSUMING OTHER NEGLIGENCE HELD ERRONEOUS.

In an action for negligence against a traction company, brought by the husband of deceased for the benefit of next of kin, based upon a collision between a trolley car and buggy in which deceased was riding with plaintiff, an instruction: "If you find that the collision was caused by the negligence of both the motorman and said husband, the plaintiff is nevertheless entitled to recover such damages as were sustained by the daughter although he would not be entitled to recover damages for his own benefit," fails to state the manner in which the negligence of defendant caused the accident and includes negligence not alleged and is erroneous.

2. NEGLIGENCE IN NOT STOPPING CAR OR REDUCING SPEED UPON SEEING A BUGGY ON THE TRACK NOT IMPUTED.

Negligent operation and excessive speed of a trolley car being alleged in an action against a traction company as the cause of a collision with a buggy, negligence cannot be imputed from the fact that, the car running at a reasonable speed with proper lookout, the motorman did not reduce its speed or stop the car when he saw the buggy upon the track, regardless of intervening distance and opportunity of the driver to get the vehicle off the track before the car reached him; the doctrine of last chance is not implied in such a case.

3. BURDEN OF PROOF, DEFENDANT HAVING OPTION AS TO DEFENSE OF CONTRIBUTORY NEGLIGENCE.

The question of contributory negligence not being raised by the pleadings, or being raised no evidence offered thereon, the issue is as upon a general denial; but having elected to prove that contributory negligence caused the injury complained of, although unnecessary, the defendant was not prejudiced by a charge putting the burden of proof upon defendant to establish the contributory negligence.

4. QUESTION LEADING WITNESS TO IMPEACH FORMER WITNESS ERRONEOUS.

A question which leads a witness to answer by using the same words which a former witness has denied using is incompetent, and permitting such a question to be answered constitutes reversible error.

5. FORMER ADJUDICATION ON ERROR CONTROLS SECOND REVIEW OF SAME CASE.

Special instructions identical with those approved either expressly or impliedly upon a former review of the cause will not be held erroneous on a second hearing of the same cause on review unless clearly erroneous.

ERROR to Hamilton common pleas court.

---

\*For prior decision see *Cincinnati Interurban Co.* v. *Haines*, 28 O. C. C. 443 (8 N. S. 77).

Hamilton County.

**Kinkead, Rogers & Ellis,** for plaintiff in error.

**Peck, Shaffer & Peck** and **S. B. Hammel,** for defendant in error.

GIFFEN, J.

The negligence averred in the petition is the moving of the car at a great and negligent rate of speed without keeping any proper lookout for persons or vehicles upon the street. The amended answer contains substantially a general denial and an averment that the injury and death of Jennie L. Haines were directly caused by the negligence and carelessness of Samuel E. Haines, which averment is denied in the reply. Verdict and judgment for plaintiff.

Special instructions numbered 2, 3, 4, 5 and 6, given at the request of plaintiff, are identical with those approved either expressly or impliedly by this court upon the former hearing of the cause, and unless clearly erroneous will not now be so held. While the definition of ordinary care and the right of the driver of a buggy upon a public street may not be in the most approved form, there was nothing in them calculated to mislead the jury to the prejudice of the defendant.

Special instruction No. 7 is as follows:

"This action is prosecuted by the plaintiff for the benefit of the next of kin of Jennie L. Haines, deceased, consisting of her husband and daughter. It is in evidence and not disputed that the husband drove the buggy in which deceased was riding at the time it was struck by the car; and it is claimed by the defendant that he was guilty of negligence which resulted in the collision between the car and the buggy. If you find that the collision was caused by the negligence of both the motorman and said husband, the plaintiff is nevertheless entitled to recover such damages as were sustained by the daughter, although in that event he would not be entitled to recover damages for his own benefit."

The objection to this instruction is, that it does not state the manner in which the negligence of the defendant caused the collision, and includes not only a remote cause, but any negligence not charged in the petition. There was error therefore in giving it to the jury at the request of plaintiff before argument.

The alleged error in not giving the special instruction on the measure of damages requested by the defendant to be given before argument will not be considered, because it does not appear affirmatively that the instruction was in writing, and it does appear that in the general charge the damages were limited to the pecuniary loss of the husband and child. The same rule would not apply to instructions

Interurban Co. v. Haines.

requested to be and actually given before argument, because in the absence of any showing to the contrary, the presumption is that the court performed its duty under the statute by giving them in writing. *Toledo, F. & N. Ry.* v. *Gilbert,* 24 O. C. C. 181 (2 N. S. 432).

Objection is made to the following portion of the general charge:

"While the question of contributory negligence is not directly raised by the pleadings, yet it is possible that in the consideration of the evidence you may find that both plaintiff and defendant were guilty of negligence, and that the negligence of each contributed directly to the injury.

"The same rule as to burden of proof I have stated above applies in the case of the defense of alleged negligence of the plaintiff, except that the burden of proof is upon defendant to prove the negligence of the plaintiff and the fact that the injuries resulted directly therefrom."

The claim is that the defendant pleaded no affirmative defense, and therefore assumed no burden. The defendant might have relied on its general denial, and pleaded no further, or having so pleaded offered no evidence in support of it, and the result would have been the same; but if it elected to prove that the negligence of the husband alone directly caused the accident, the burden, although unnecessary, was thereby assumed. The court did not intend, nor was it understood by the jury, that the defendant was required to prove the averment, if content to rest upon its general denial. At all events the defendant was not prejudiced thereby.

The court also charged the jury as follows:

"Even if the car was not running at what would ordinarily be an unreasonable rate of speed at that hour and that place, yet if at whatever rate of speed it was running the motorman saw this buggy on the track in time to have stopped his car or slowed up so as to have prevented the accident, it would have been his duty to do that, and if he carelessly or negligently failed to stop or slow up said car, and as a result ran the buggy down, the defendant was guilty of negligence."

This charge assumes that the car may have been running at a reasonable rate of speed and that the motorman saw the buggy and was therefore keeping a proper lookout, whereby the two alleged acts of negligence were eliminated. The vice consists in imposing upon the defendant the duty of stopping or slowing the speed of the car when the motorman saw the buggy on the track, regardless of the distance and opportunity the driver had to get off the track before the car reached him, or in holding it liable for negligence not charged in the

petition, to wit: the failure to exercise due care after seeing the peril in which the occupants of the buggy were placed. The first duty is not required by law and the second is not pleaded.

It may be that the statement that the motorman saw the buggy does not necessarily imply that he was aware of the danger, and hence the doctrine of "last chance" would not apply; but if not, then the duty to stop or slow the speed of the car was too broadly stated.

The explanation, if such it be, given by the court concerning special instruction No. 5 requested by defendant was not prejudicial, and therefore no ground for reversal of the judgment.

There being no certificate of the trial judge that the bill of exceptions contains all the evidence, we are not required nor permitted to weigh the evidence for the purpose of ascertaining whether the amount of the verdict is excessive.

There was no error in excluding the testimony offered as to width of space between the west rail and west curb on Lockland avenue, south of Cliff street, as it does not appear how far south or what relevancy it had.

It is claimed the court erred in permitting the plaintiff to answer the following questions:

"Q. Now I will ask you, Mr. Haines, if the motorman of the south bound car, when he passed you, called out to you, 'look out, boys, for the coming car.'

"Q. Mr. Haines, when the motorman on the north bound car, after he had stopped, came to where you were, immediately after the accident, did he make use of these words 'My God,' he said, 'I never saw you until I hit you,' "
the claim being that there was an abuse of discretion in allowing such leading questions on direct examination.

Counsel for defendant say in their brief:

"When witnesses for the defendant were on the stand they were asked on cross-examination by plaintiff's counsel whether they had made the statements referred to in the questions above quoted, and they denied having made them. The purpose of putting the questions to Mr. Haines was to impeach defendant's witnesses."

This is true only as to the second question, because the record shows that the statement in the first question was made by the witness himself in direct examination conducted by counsel for defendant. The rule in such case is stated in Starkie, Evidence 169, as follows:

"Where a witness is called in order to contradict the testimony

Interurban Co. v. Haines.

of a former witness, who has stated that such and such expressions were used, or such and such things were said, it is the usual practice to ask whether those particular expressions were used or those things were said, without putting the question in a general form by inquiring what was said. If this were not to be allowed, it is obvious that much irrelevant and inadmissible matter would frequently be detailed by the witness.''

It would seem from this statement of the law that there was no abuse of discretion in permitting Mr. Haines to answer the first question, but the second is of an entirely different nature, because it leads the witness to answer in words which the former witness has denied. Starkie, Evidence 170 it is said:

''Where a witness is called to prove affirmatively what a witness on the other side has denied, as, for instance, to prove that on some former occasion that witness gave a different account of the transaction, a difficulty may frequently arise in proving affirmatively that the first witness did make such other statement, without a direct question to that effect   *   *   *   and it seems that the consideration of mere convenience ought not to operate at all, where the contents of a particular document, of the details of a particular conversation, are material to the issue.''

In this case there could be no difficulty in proving affirmatively by Mr. Haines what words the former witness used, if his attention were directed to the particular subject-matter; but the most serious objection to the question is that the statement made by the former witness was not only material to the issue, but if true, determined the case in favor of the plaintiff. See, also, 2 Phillips, Evidence 893.

The case of *King* v. *Wicks*, 20 Ohio 87, 89; *Runyan* v. *Price*, 15 Ohio St. 1 [86 Am. Dec. 459], and *Kent* v. *State*, 42 Ohio St. 426, decide only that such testimony is admissible for the purpose of impeachment, and not that a leading question may be put.

While it is true as held in the third proposition of the syllabus in *Evans* v. *State*, 24 Ohio St. 458, 459: ''The mere fact that leading questions are improperly allowed on the examination of a witness, although allowed as of right, is not error for which the judgment will be reversed,'' yet on page 463 it is said:

''The allowing or refusing of leading questions in the examination of a witness must very largely be subject to the control of the court, in the exercise of a sound discretion. While we do not say that a case may not arise in which there may be such an abuse of discretion as

to deprive the party of a fair trial, and thus call for the interference of this court, it is plain that the present one is not of that character.''

It is difficult to conceive of a more extreme case than the one before us. The plaintiff had in the examination in chief of Mr. Haines attempted to introduce the declaration of the motorman, but the court properly excluded it because it was a mere recital of a past transaction not binding on the defendant as an admission; and if competent and true was conclusive of the main issue in the case. Besides the statement in the question laying the foundation for impeachment and the one put to Mr. Haines are not identical, although the same in substance, the former being, "My God, I didn't see you until I hit you," which in itself furnishes a good illustration of the uncertainty and danger of leading a witness upon a matter so important and of which his own recollection is the best evidence.

The judgment will therefore be reversed and the cause remanded for a new trial.

**Swing** and **Smith, JJ.,** concur.